The next case for argument is 22-1311, Fritz v. McDonough. Good morning, Mr. Carpenter, whenever you're ready. Good morning, Your Honor. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. James Fritz. At issue in this case is the lower court's decision that Mr. Fritz, in his argument to the Veterans Court, presented a new theory of cue. That did not happen. Mr. Fritz simply made two specific verments of error about how the Board applied the same regulation that was the basis for the single theory of cue, which was that the original decision failed to correctly apply 3.303b. Can we review a Veterans Court determination of whether a new cue claim has been presented to the Veterans Court on appeal to the Veterans Court? I believe this Court did that in Andre to establish the rule that was made by the Veterans Court that you could not present one. So we can evaluate looking at the theory that was originally presented when the cue claim was filed to the VA and then read your Veterans Court brief and then try to slice and dice and figure out for ourselves, I don't know, perhaps in a de novo way, whether or not the Veterans Court correctly concluded that there was something in your brief to the Veterans Court that was new and different from what was presented in the original cue claim? I think the distinction here is that the decision in Andre was based upon the presentation of a clearly separate theory of cue that was not presented to the agency. The theory of cue in this case was presented to the agency, was reviewed by the Board, and that is finite. That is within the single theory presented. The question here for this Court's review is whether or not the Veterans Court properly determined that arguments that were made about the error made by the Board could, as a matter of law, constitute a different theory of cue. So I think the distinction is this Court would not be reviewing the original cue allegation but be reviewing what the Board did versus what, in terms of their application of... You mean what the Veterans Court did? What the Veterans Court did in reviewing what the Board did in terms of its application of the regulation at issue. The allegation made before the Veterans Court was focused exclusively on... I'm trying to remember. I thought your lead argument was the Veterans Court did not apply the rule from Andre in terms of determining whether or not a new cue claim had been impermissibly presented to the Veterans Court. Well, we believe that they incorrectly used the rule in Andre because the rule in Andre refers to the presentation of a separate theory of cue. There is no separate theory of cue being presented to the Veterans Court for the Veterans Court to rule on. The Veterans Court here was only asked to rule on whether or not the Board did or did not correctly apply the same regulation that was the basis for the allegation of cue. I guess my concern is, at bottom, this boils down to a requirement. You're asking us to necessarily do some kind of assessment on what the scope of the original cue claim was to figure out whether what was argued in your Veterans Court brief falls within the scope of that original cue claim. And that's starting to sound like application of law to fact. And if this Court understood my briefing to ask that, that is my fault for not making it clear. What we were trying to present, what I believe we presented, was that it was error for the Veterans Court to determine that an averment of error based upon the Board's failure to correctly apply 3.303B constituted, or could at law constitute, a new theory of cue. This has nothing to do... I'm not following what you're saying here. Okay. What you're saying, your real theory is that the Board, the CABC, for us to review what the CABC did. The Veterans Court, in this case, looked at the arguments presented by Mr. Fritz to them as being a new theory of cue because of the arguments that were made in the averment of error by the Board in its application of 3.303B. So how is that not what Judge Chen was concerned about in terms of our standard of review and reviewing the application of law? Because it isn't a question of the application of law to the cue claim. That is the important distinction here. The cue claim, excuse me, the theory of cue, not the cue claim, the theory of cue presented to the agency as the basis for reversal or revision was based upon the single theory of the VA's failure in its original decision to correctly apply, to deny the Veteran the benefit of the regulatory presumption of service connection. If we had to reach the merits of this case, would we not be deciding whether the CABC was correct in saying that the arguments made by the Board, that there was a new argument made to the CABC that had not been made to the Board? Would we not have to resolve that question? No, Your Honor, because there was no... Let me try it this way. Any appellant seeking judicial review of a Board decision is entitled to judicial review based upon averments of error made by the Board in its application of the applicable law. That applicable law, in this case, happens to be the same regulation. What the Veterans Court did was to deny Mr. Fritt's judicial review by saying that those were a new theory of cue. So in order to decide this case, and that the CABC was an error, we would have to decide the question about whether they were right or wrong in construing what was appealed to them as being new or different from what was said to the Board? No. I'm sorry, Your Honor. Sorry. I'll give you one more shot. Well, clearly, I apologize for not making myself clear. Do they not have to decide that? I mean, do we not have to say anything about whether this was new and different than what was before the Board? No, Your Honor. You have to decide whether or not Mr. Fritts had the right to present the legal arguments that he presented to the Veterans Court based upon error by the Board. The error by the Board alleged was that the Board failed to correctly apply these regulations, and that this specific regulation, 3.303B, is a regulatory presumption that includes specific elements that are necessary to trigger that presumption. And those were the elements that we allege the Board did not correctly apply in doing its analysis of whether there was cue by the original VA decision. If the cue... Are you maintaining that you can present a new cue theory to the Veterans Court that you did not apply to the Board? Absolutely not, Your Honor. And are you contending that we get to decide whether or not there was a new cue theory presented to the Veterans Court? Do we... The latter part of your question, the answer is yes. I do believe that this Court has the right to... or, excuse me, the authority to determine whether or not the Veterans Court made an error of law by characterizing the averments of error made to the Board about the Board's review as a new theory of cue. They were not a new theory of cue. We weren't asking the Veterans Court to decide under that... Can you help me on the theories, then? There's this specific about whether your client was prescribed certain medicine, I think, ulcer medicine, right? Yes, whether or not the prescription of medicines that were for ulcers... And was that part of the theory of cue at the Board level? The theory of cue presented to the Board was the same theory of cue presented to the agency in the original instance, that Mr. Fritz was entitled to the benefit of the regulatory presumption that his symptoms, based upon the medications that he was receiving for an ulcer, qualified under the regulation as noted as such during service. So the medication is part of the cue theory presented to the agency and to the Board? Correct. And then at the Veterans Court, is the medication part of the cue theory that's presented for review at the Veterans Court? No, we are not asking the Veterans... The Veterans Court's case law is clear. They do not do a plenary review of the allegations of cue. They only look at the decision of the Board. And the decision of the Board to deny cue was not based upon a cue theory, but based upon a misapplication of the very regulation that was the basis for the allegation of cue. Let me take a crack at this. As I understand what the cue claim was when it was filed, it was the RO originally in 1974 didn't fairly appropriately look at all of Mr. Fritz's medical records that were during service that showed he was having all kinds of stomach problems and he got medication for it. And under 3.303B, he should be recognized as having had an ulcer at that time, a serious chronic ulcer. And then at the Veterans Court level, it looked like there was a moment in the Veterans Court brief where you spotlighted something and said, hey, I want you to resolve a question of law. And the question of law is this. Is the prescription of ulcer medicine during service automatically meet the chronic disease requirement as such in 3.303B? Correct. And I think the Veterans Court reacted to that by saying, I don't recall you ever in your original cue claim ever saying just that, just narrowly looking at the medicine prescribed and saying the prescription of this medicine automatically as a matter of law meets the definition of having a chronic disease under 3.303B. That's not something that the VA ever evaluated because they never saw it, so I'm not going to do it in the first instance. I'll take a look at what actually was argued, which was all of this medical evidence, taking it into account, including countervailing evidence that suggests that he, in fact, didn't have a chronic ulcer at that time. And in the end, I'm not going to find any error by the board in that instance. So when you put, if I'm understanding the record and the history of this case together, I guess you're asking us to say when you and your Veterans Court brief spotlight this moment saying, I want you to resolve this question of law. Can the prescription of medicine automatically per se qualify as entitling this person to be deemed as having a chronic disease? That's not exactly what you said in your original Q claim. But the problem with that, Your Honor, is the case law below at the Veterans Court in the Archer case says that they will not do that very thing, that they will not review the allegations made as to whether or not there was or wasn't Q. All they will look at is whether or not the board's decision was made in accordance with law. They're only reviewing what the board did. And that's the question of law we're presenting to this court. Did they violate their own precedent in Archer by doing precisely what you described, by going beyond the averment of error and looking to the underlying allegations of Q? They've told us they won't do that. So I can't ask them to do that. And if I can't ask them to do that, then I have to rely solely on the averment of error made in the processing of that review by the board. If the CAVC is right, or affirmed, or whatever, are you restrained from walking over tomorrow and filing a new Q claim based on this question of law of the medication by itself? I do not believe I am constrained. What I am concerned that I will face is a decision by the agency that this issue has already been decided by the agency. Well, we'll talk to the agency. Thank you. Thank you very much. Good morning, Your Honors. May it please the Court. The Court should dismiss this appeal for lack of jurisdiction because the Court does not have jurisdiction to reassess the scope of Q claims that are submitted to the board and to the Veterans Court. The Veterans Court here looked at the Q claim that was submitted to it, made a factual determination that that was different than the Q claim that was submitted to the board, just like what happened in Andre, and therefore said that it didn't have jurisdiction to, or didn't have authority to review the new Q claim. Go ahead. Just on the last point I raised with Mr. Carpenter, is he therefore exhausted out of filing a new Q claim because on this medication, if the CAVC has concluded that that really wasn't the issue that was presented before the board, is there anything that would constrain him from tomorrow filing a new Q claim based exclusively? I know it depends on what words, but in general, if that were to happen, would he be excluded from doing that? No, Your Honor. He can raise a Q claim at any time, and we cited that in our brief. And just educate me on Veterans Court law that the remedy that he could obtain in the Q claim universe goes back to the original one irrespective of when he files the claim. In other words, he won't be prejudiced in terms of the time if he were to recover what he could get out of the claim by tomorrow as opposed to the one filed 5 years ago. That's correct, Your Honor. If Q is found, it goes back to the original file date, which would be 1974 here. This is not a subsequent appeal where he's reopening the record and the effective date would be the date of the new claim. I interrupted you. I know the law says, the case law says, every specific different Q claim is its own Q claim. But that doesn't answer the question of how do you figure out whether one Q claim is different from another Q claim. And that seems to be the heart of the debate here, at least the one that Mr. Carpenter wants to present to us. Even though I know your position is we can't get into that here, we're not permitted to because that's application of law and facts, could you use the facts of this very case to illustrate how and why it's correct to think about what was presented in the veterans court brief here as being a different Q claim from the one that was originally presented so I can understand what makes one Q claim different from another Q claim. Because one could imagine that what was argued in the veterans court brief here as being somehow subsumed in what was presented in the original Q claim. After all, the original Q claim did in fact talk about the medication that he was prescribed while he was in service for all of his stomach problems. And I'll, sure Your Honor, I think it's important to note what you said is that each Q claim has to be pledged with specificity. You can't make one generalized Q claim that subsumes smaller arguments. Right, but it gets a little scary if, you know, one fact pattern can actually get carved up into 80 different Q claims. I mean, there's a certain point where you're slicing the bologna too thin. Sure, Your Honor, but this isn't like a claim where a party can make a claim and then during the course of litigation you can make new arguments, right? A Q claim has to be very specific. You have to identify with particularity and specificity, as stated in Andre, the specific, clear, and unmistakable error. So what do you say he raised before the board? I mean, it was his medical records. There was a reference to the medication. He may have raised, identified three things in the medical records, but one of those three things was the medication. So was that, if the board had decided to treat the medication and just treat them individually, that would have been fine, right? There was enough specificity to include it was not the only thing he raised, but it was among the things that he raised. Isn't that specific enough? No, Your Honor, I think what he raised at the board was that, what he raised was that there was a failure to consider 3.303B. It was very general. I would point, Your Honor, to Appendix 44. That's where he says his claim to the board is a failure to consider and apply 3.303B. So that's a very broad statement or assertion of Q. You can't later then go to the Veterans Court, make a specific argument under the general umbrella of 3.303B, and say, well, I made this generic assertion of 3.303B, and you didn't consider this specific argument. It's the reverse in the Q world. In the Q world, you have to make a specific, particularized assertion of an error, and only that. But in the record, didn't he, before the board, as part of his argument, say that the records were based on a chronic condition, ulcers, emotions? Didn't he have a motion that did note that Mr. Fritz was prescribed Gelyasil in 1966 and was prescribed whatever else in November 1966? Didn't he call that out before the board? I believe those facts were in the record. But as it relates to his Q claim, which, again, Appendix 44, he doesn't call out the medication like he does at the Veterans Court. What's the basis for the requirement that he had to be that specific? Is that the Andre decision, or is that something we've said? That's the Andre decision, which is what this court has said. And there's a whole section in the Andre decision explaining the specificity requirements and how really it benefits the veteran to be so specific because we're in a case like here where if this court were to sustain the Veterans Court or dismiss this case for lack of jurisdiction, the veteran here can go back and assert a new Q claim. If we're in a world where a veteran can assert these really broad Q claims and a court rejects it once, then they wouldn't be able to go back and reassert Q. And so it's for the benefit of the veteran also that they have to plead with this specificity. Here, Your Honors, all of this that we've been talking about is this court reviewing the two scopes of the claims, which, back to our original point, is outside the scope of discourse jurisdiction. This is an application of law to fact, or perhaps just a factual determination, the scopes of the claims. So I don't think this court even needs to compare the board Q claim with the Veterans Court Q claim because it's not a question of law. There's no case that says that. The appellant has cited no case that says that. Although Mr. Carpenter, I think if I heard him correctly, his first answer to that was, well, that's what we did in Andre. So how come we could do it in Andre and not in this case? Well, in Andre, the court was deciding, as I said, for the first time, whether the Veterans Court could consider a new Q claim asserted for the first time at the Veterans Court. That was a question of law, the scope of the Veterans Court's authority and jurisdiction to consider a newly raised Q claim. Now that's settled. We know that the Veterans Court can't consider for the first time a new Q claim on appeal. And that's the exact situation that we're at here. We have a Q claim to the board, and then we have a Q claim to the Veterans Court. The Veterans Court decided they were different. The veteran here won't be prejudiced. He can go back and assert this more particularized Q claim to the VA after this appeal. But that's something we can't review is what you're saying, the Veterans Court's determination that this was a new Q claim. That's correct, Your Honor. There's no scenario where we can ever look at that? If the appellant could articulate a legal hook, a legal question, I guess perhaps I can't think of one, it's a factual determination. And it's the Veterans Court looking at one piece of paper, the Q claim, and comparing it to another. It's not a question of law that's within this court's jurisdiction. I think this court made that very clear in Andre. Did I get the procedural history of this case accurately told when I said that his original Q claim seems to be a more fact-based argument, that everything in his medical records tells a compelling story, that he qualifies as having shown a chronic disease back during service under 3.303, whereas in the Veterans Court brief he made a legal argument about what prescription of certain kinds of medicine should automatically qualify as a chronic disease under 3.303. I think that's an accurate characterization, Your Honor. And both the Board and the Veterans Court noted that what this appellant seems to be doing is arguing for re-weighing of the evidence. And that's not the purpose of the Q vehicle. It's to identify the specific particularized error. So to the extent that we're getting into weighing of what evidence he submitted back in 1974 or before, that's a weighing of the evidence that's also outside of this court's jurisdiction, and the Veterans Court noted that it wasn't going to review that either. So for those reasons, Your Honor, we ask that the court dismiss this appeal for lack of jurisdiction. Thank you. Thank you. I'd like to start first with the question of the specificity requirement. The specificity requirement does not come from Andre. The specificity requirement comes from Fugot. Fugot is a Veterans Court decision that said that in order to make an allegation of Q, the veteran or claimant must specifically identify the law that was not correctly applied or the facts that were not correctly applied or were before the agency at the time of its original decision. It does not go into the description that was given to this court by the government as to the specificity requirement. That specificity requirement ends up precluding an ability of a veteran to make a specific allegation. Now let's move to Andre. I was counsel in Andre, and I made the error of law, decided after the fact, that I could not raise a different theory of Q, which I clearly did in Andre. I argued before the agency one theory of Q. I got to the board and said, no, there is a different theory of Q that I want you to correct. This court affirmed and said, you can't do that. You're stuck with the horse you bet on. In this case, we described a legal error for the failure to correctly apply 303B, and we described the factual mistakes that were made in the original decision. So we combined the two things that are required for the specific pleading requirement under Fugot. Then when we get to the board, the government kept referring to the board making a Q claim. There is no Q claim to the board except under 7111 when the decision under review is a board decision. ROQ is a different animal. ROQ requires Q in a rating decision to be decided in the first instance by the agency of original jurisdiction, which is what happened here. We presented in 2015 an allegation of Q. That allegation was denied. We appealed it to the board for a de novo review of that allegation, that theory of Q on the failure to correctly apply 3.303B. When we get to the Veterans Court, we are constrained by Archer from asking the Veterans Court to review the underlying theory of Q. That simply puts us in a box that we can't get out of, and the Veterans Court erred as a matter of law by violating its own precedent in Archer and examining the underlying theory of Q and saying that that underlying theory of Q was not the averment of error made to the Veterans Court. We said that the Veterans Court made a legal error in how they applied 3.303B because they didn't consider this medical evidence in the context of the triggering event to give him the benefit of an award of service connection. Unless there are further questions by the panel, we'll stop there. Thank you.